# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DALE KESSLER,**
        **Plaintiff,**

      v.                                                                         Case No. 17-C-0082

**SAMSUNG ELECTRONICS AMERICA INC.,**
        **Defendant.**

---

## DECISION AND ORDER

Dale Kessler, a Wisconsin citizen, brings this putative class action in diversity against Samsung Electronics America Inc., a New York corporation with its principal place of business in New Jersey. Kessler alleges that he bought a Samsung brand smartphone with a defective glass cover on its rear-facing camera that spontaneously shattered within days after he purchased it, Samsung knew about the defect but concealed it from the public, and Samsung has refused to honor its warranty obligations to repair or replace his defective smartphone. He seeks relief under state law for consumer fraud, unjust enrichment, and breach of express and implied warranties. He also seeks relief under the federal Magnuson-Moss Warranty Act (MMWA). Samsung moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss pursuant to . . . Rule . . . 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, "a complaint must allege 'sufficient factual matter to state a claim to relief that is plausible on its face.'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Gogos v. AMS Mech. Sys. Inc.*, 737 F.3d 1170, 1172 (7th Cir.

2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## I. CONSUMER FRAUD

Kessler alleges that Samsung violated New Jersey's Consumer Fraud Act (CFA) by knowingly concealing a defect in its phones when advertising them to the public. *See* N.J. Stat. Ann. § 56:8-2 (West, Westlaw through 2017 N.J. Laws ch. 245). Samsung argues that Wisconsin law, not New Jersey law, governs any claims arising from Kessler's allegations of consumer fraud. Unlike the CFA, Wisconsin's Deceptive Trade Practices Act (DTPA) does not "impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 170, 677 N.W.2d 233, 245 (construing Wis. Stat. § 100.18(1)).

"Since different law may be applied to resolve further proceedings in this case, and the selection of law will affect the outcome, this court is faced with a conflict-of-laws problem and is obliged to make a choice between" New Jersey's CFA and Wisconsin's DTPA. *See Hunker v. Royal Indem. Co.*, 204 N.W.2d 897, 901 (Wis. 1973); *see BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 829 (7th Cir. 2015) ("A federal court sitting in diversity applies the law of the state in which it sits, including the state's choice-of-law rules.").

Wisconsin's first choice-of-law rule is, "the law of the forum . . . presumptively appl[ies] unless it becomes clear that nonforum contacts are of the greater significance." *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 658, 714

N.W.2d 568, 575–76 (quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 588, 641 N.W.2d 662, 676). In applying this rule, I must first consider whether the nonforum contacts are "more than minimal." *Waranka v. Wadena Ins. Co.*, 2014 WI 28, ¶ 31, 353 Wis. 2d 619, 636, 847 N.W.2d 324, 332 (citing *Beloit Liquidating Tr. v. Grade*, 2004 WI 39, ¶ 24, 270 Wis. 2d 356, 374–75, 677 N.W.2d 298, 307). If the nonforum contacts are "so obviously limited and minimal that application of that state's law constitutes officious intermeddling," then those contacts are clearly not "of the greater significance," and I must apply Wisconsin law. *See Drinkwater*, 2006 WI 56, ¶¶ 40–42 (quoting *Beloit Liquidating*, 2004 WI 39, ¶ 24; *Gillette*, 2002 WI 31, ¶ 51).

"If more than minimal [nonforum] contacts exist," *Waranka*, 2014 WI 28, ¶ 31, but "it is not clear that the nonforum contacts are of greater significance," *Drinkwater*, 2006 WI 56, ¶ 40, then I must consider each of "five factors that influence the choice of law," *Gillette*, 2002 WI 31, ¶ 53. Those choice-influencing factors are "predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law." *Waranka*, 2014 WI 28, ¶ 31 (citing *Beloit Liquidating*, 2004 WI 39, ¶ 25).

### A. Nonforum Contacts

New Jersey has more than minimal contacts with this action as it concerns Samsung's alleged consumer fraud or deceptive trade practices. Samsung's pertinent marketing and advertising decisions were allegedly made in New Jersey, where it is headquartered. *See* Restatement (Second) of Conflict of Laws § 145(2)(b)–(c) (1971) (noting that pertinent contacts may include both "the place where the conduct causing the injury occurred" and the "place of business" of any party). Moreover, the complaint

suggests that Samsung's decisions were not specific to Wisconsin but concerned nationwide marketing and advertising of the smartphones at issue. *See* Compl., ECF No. 1, ¶ 56; *see also id.* ¶¶ 5–6 (quoting a general corporate press release and webpage promoting Samsung's relevant products). Where, as alleged here, "the place of injury can be said to be fortuitous" because "the defendant had little, or no, reason to foresee that his act would result in injury in [any] particular state," the state where the defendant's alleged conduct occurred may be particularly significant. *See* Restatement (Second) of Conflict of Laws § 145 cmt.e. As alleged here, that state is New Jersey.

Yet, New Jersey's contacts are not clearly more significant than Wisconsin's. If Kessler suffered a compensable injury under either the CFA or the DTPA, he suffered it in Wisconsin, where he bought his smartphone and it broke. *See* N.J. Stat. Ann. § 56:8-19 (West, Westlaw through 2017 N.J. Laws ch. 245) (providing a private right of action to "[a]ny person who suffers any ascertainable loss of moneys or property" due to a violation of the CFA); § 100.18(11)(b)(2) (providing a private right of action to "[a]ny person suffering a pecuniary loss because of a violation of" the DTPA). "[T]he place where the injury occurred" is often a significant contact in a tort case, at least where, as alleged here, "the injury occurred in a single, clearly ascertainable, state." *See* Restatement (Second) of Conflict of Laws § 145(2)(a) & cmt.e ("[P]ersons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury."). Kessler is also allegedly a resident of and domiciled in Wisconsin, which are significant contacts with this state. *See id.* § 145(2)(c).

4

## B. Choice-Influencing Factors

Because New Jersey has more than minimal contacts with the portion of this case that concerns Samsung's allegedly deceptive trade practices, but those contacts are not clearly more significant than those of the forum state, I turn to the five choice-influencing factors used in Wisconsin to resolve conflicts of law.

"The first factor, predictability of results, deals with the parties' expectations." *Gillette*, 2002 WI 31, ¶ 54. Nothing in the complaint suggests that Kessler would have had any reason to expect that any law other than that of his home state would apply if he fell prey to deceptive trade practices or false or deceptive advertising here. Samsung, which advertises and sells electronics nationwide, should expect to be subject to local law wherever it "choose[s] to transact business," *see Beloit Liquidating*, 2004 WI 39, ¶ 26 (citing Wis. Stat. § 180.1704), even if, as mentioned above, it had no reason to think that its nationwide marketing efforts might cause harm in any particular place. Under these circumstances, applying Wisconsin law best reflects the parties' expectations so best serves predictability of results.

"The second factor, maintenance of interstate and international order, requires that the jurisdiction that is minimally concerned defer to the jurisdiction that is substantially concerned." *Gillette*, 2002 WI 31, ¶ 55. Both the CFA and the DTPA are concerned with protecting the public from sellers that engage in fraud and other deceptive trade practices. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994); *Novell v. Migliaccio*, 2008 WI 44, ¶ 30, 309 Wis. 2d 132, 145, 749 N.W.2d 544, 550. Thus, in general, the state where "damages were suffered" will be the state most

concerned with an action under either law. *See Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d 942, 986 (N.J. Super. Ct. Law Div. 2003). Here, that state is Wisconsin.

"The third factor is simplification of the judicial task, a principle in choice of law that states a 'simple and easily applied rule of substantive or procedural law is to be preferred.'" *Gillette*, 2002 WI 31, ¶ 59 (quoting *Heath v. Zellmer*, 151 N.W.2d 664, 672 (Wis. 1967)). On the record before me, it does not readily appear that applying either Wisconsin or New Jersey law will simplify my task. Moreover, "simplicity may well be outweighed by other considerations." *Heath*, 151 N.W.2d at 672. Thus, I will move on to the fourth choice-influencing factor.

"The fourth factor is advancement of the forum's governmental interests." *Gillette*, 2002 WI 31, ¶ 61. In addressing this factor,

> [t]he question . . . is whether the proposed nonforum rule comports with the standards of fairness and justice that are embodied in the policies of the forum law. If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not . . . a determining, factor in the ultimate choice of law.

*Heath*, 151 N.W.2d at 673. The parties do not address this factor, so I will assume that applying the DTPA—the present embodiment of more than 100 years of legislation in Wisconsin concerning "untrue, misleading and deceptive advertisements," *see* 1913 Wis. Laws ch. 510—best reflects and will advance Wisconsin's governmental interests.

"The fifth and final factor is the application of the better rule of law," *Gillette*, 2002 WI 31, ¶ 66, that is, the "one that to the court appears to present the sounder view of the law in light of the socio-economic facts of life at the time." *Heath*, 151 N.W.2d at 673. In addressing this factor, the question is whether the law of either the forum or the "other state is outmoded, . . . obsolete or senseless." *Id.* Nothing suggests that either

6

the CFA or the DTPA is outmoded or otherwise anachronistic. *See* Robert A. Leflar, *Conflicts Law*, Cal. L. Rev. 1584, 1591 (1966), *cited in Heath*, 151 N.W.2d at 673. The DTPA, in fact, was amended less than a year ago, *see* 2017 Wis. Act 22, which certainly suggests that it is not some vestigial relic that does not reflect "currently accepted social standards," *see* Leflar, *supra*, at 1591.

Consideration of the choice-influencing factors favors applying Wisconsin law to Kessler's allegations of consumer fraud or deceptive trade practices. As such, New Jersey's CFA does not apply here, and I will grant Samsung's motion to dismiss Kessler's claim under it. Kessler does not argue that his complaint states a cognizable claim under Wisconsin's DTPA, so I need not consider whether it does.

## II. UNJUST ENRICHMENT

Kessler alleges that Samsung was unjustly enriched when it took and retained payment in exchange for a defective phone. In Wisconsin, "an action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Sands v. Menard*, 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W.2d 789, 798 (quoting *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987)); *see also* Pl.'s Br., ECF No. 11, at 25 n.6 (conceding that his unjust-enrichment claim is governed by Wisconsin law).

Samsung argues that Kessler's unjust-enrichment claim fails because the parties had a contract. "Generally speaking, if the parties . . . made an enforceable contract and there is no ground for rescission, then breach-of-contract principles . . . govern the dispute," not "quasi-contractual theories of relief" like unjust enrichment. *Lindquist Ford,*

7

*Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476 (7th Cir. 2009) (citing *Watts*, 405 N.W.2d at 313; *Arjay Inv. Co. v. Kohlmetz*, 101 N.W.2d 700, 702 (Wis. 1960)).

However, Samsung's arguments on this issue are "[p]erfunctory and undeveloped." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). It baldly asserts that the parties "entered into a valid contract when Plaintiff purchased the smartphone" and that plaintiff "acknowledges a written agreement with Samsung by pleading the Limited Warranty in the Complaint." *See* Def.'s Br., ECF No. 7, at 25–26. Yet, it provides no legal authority that merely purchasing goods or providing a warranty invariably gives rise to an enforceable contract precluding quasi-contractual relief. Moreover, it provides no factual elaboration about the circumstances of the sale, which could affect the enforceability of any contract arising from it, e.g., under the statute of frauds, *see* Wis. Stat. § 402.201(1) (providing that contracts for the sale of goods for $500 or more must be in writing); Compl., ECF No. 1, ¶ 10 (alleging that the retail replacement cost for the smartphone at issue was between $650 and $800); *Felland v. Sauey*, 2001 WI App 257, ¶ 16, 248 Wis. 2d 963, 973, 637 N.W.2d 403, 408 (noting that a claim for unjust enrichment is available where a contract is rendered invalid by the statute of frauds). It is not clear from the facts as alleged that the parties made an enforceable contract, so without more, Samsung fails to justify dismissal of Kessler's unjust-enrichment claim on this basis.

Samsung argues in its reply brief that the Seventh Circuit's holdings in *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), and *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), establish that any terms or conditions provided with a product sold to a consumer bind the consumer after he has had "an opportunity to read the

terms and to reject them by returning the product." *Id.* at 1148 (describing the court's holding in *ProCD*). Thus, according to Samsung, the parties entered into an enforceable contract when Kessler bought his phone, had an opportunity to read the terms and conditions included with it, and failed to reject them by timely returning it. Whether that's true, I need not address "an argument raised for the first time in a reply brief." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

Samsung has not shown that dismissal of Kessler's claim for unjust enrichment is warranted. Therefore, I will deny its motion to dismiss with respect to that claim.

### III. BREACH OF EXPRESS WARRANTY

Kessler alleges that Samsung provided an express, one-year limited warranty when he bought his smartphone but refused to honor it by repairing or replacing his phone when it broke during the warranty period. In general, under Wisconsin law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Wis. Stat. § 402.313(1)(a); *see also* Pl.'s Br., ECF No. 11, at 13 n.4 (conceding that his warranty claims are governed by Wisconsin law, not New Jersey law). Samsung expressly "warrants that [its] devices . . . are free from defects in material and workmanship under normal use and service," *see* ECF No. 8-2, at 26, and provides specific, limited remedies for breach.

Samsung argues that Kessler's claim for breach of express warranty fails because he did not provide adequate pre-suit notice of breach as required by Wisconsin law. *See* Wis. Stat. § 402.607(3)(a). Section 402.607(3)(a) "requires a buyer . . . , as a precondition to recovery, to notify a seller of a breach 'within a reasonable time after the

9

buyer discovers or should have discovered any breach[.]'" *Halderson v. Star Blends, LLC*, 2016 WI App 18, ¶ 13, 367 Wis. 2d 350, 876 N.W.2d 179. "The content of the notification need merely be sufficient to let the seller know that the transaction *is still troublesome and must be watched*." *Id.* ¶ 19 (quoting *Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 861 (Wis. 1982)); *see also Wilson v. Tuxen*, 2008 WI App 94, ¶ 41, 312 Wis. 2d 705, 731, 754 N.W.2d 220, 232 ("[N]otice serves to advise the seller that 'the buyer considers him [or her] . . . responsible to remedy a troublesome situation.'" (omission and alteration in original) (quoting *Paulson*, 319 N.W.2d at 862 n.8)).

Kessler alleges that the day after his phone broke he called Samsung and spoke with a representative who opened a "ticket" about his complaint but told him that there was not much that Samsung could do to help. He alleges that three days later he again spoke to a Samsung representative who told him that it was his fault that the lens cover on his phone's camera broke so the damage was not covered under his limited warranty. Finally, he alleges that he spoke in person and on the phone with representatives of his service provider who also contacted Samsung about his broken phone. These allegations—of multiple phone calls to Samsung communicating Kessler's specific issue with his phone and discussing whether that issue was covered by his limited warranty—are certainly sufficient to suggest that Samsung was on notice that "the transaction was 'troublesome' and should be watched" and that Kessler considered Samsung responsible for rectifying the situation. *See Halderson*, 2016 WI App 18, ¶¶ 22, 25 (citing *Paulson*, 319 N.W.2d at 861; *Wilson*, 2008 WI App 94, ¶ 41).

Samsung next argues that Kessler's express-warranty claim fails because he sued mere days after reporting the issue with his phone so failed to provide it with an

opportunity to cure the breach. Requiring pre-suit notice "seeks to eliminate an element of unfair surprise where a seller has not been informed that a situation is troublesome and, therefore, cannot take steps to correct it but only later has a lawsuit filed against him." *Id.* ¶ 23 (quoting *Paulson*, 319 N.W.2d at 862 n.8); *see also Wilson*, 2008 WI App 94, ¶ 41 ("[I]f the seller is not aware that the goods are defective, the notice can serve to inform the seller of the defect and give the seller an opportunity to remedy it.").

As noted above, Kessler alleges that he called Samsung; a representative acknowledged his complaint and opened a "ticket" documenting it; and he spoke with a representative a few days later who told him, in no uncertain terms, that Samsung would not do anything to remedy the situation because it had no obligation to do anything to remedy the situation. These alleged facts certainly suggest that Kessler gave Samsung the chance to address his concerns and that Samsung flatly refused to take any corrective action. Thus, Kessler did not deny Samsung an opportunity to cure; Samsung simply declined to take advantage of the opportunity that Kessler provided it.

Samsung also argues that Kessler failed to comply with the terms of his limited warranty—specifically, that he return his defective device for repair or replacement—so his claim for breach of that warranty necessarily fails. However, while a seller can limit "[r]emedies for breach of warranty," Wis. Stat. § 402.316(4), those limitations dissolve "[w]here circumstances cause a[] . . . limited remedy to fail of its essential purpose," *id.* § 402.719(2), such as "when the seller fails to live up to the remedy's provisions," *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1010 (7th Cir. 1996), or "repudiates . . . with respect to a performance not yet due," *see* Wis. Stat. § 402.610. The alleged facts suggest that Samsung was obligated under the terms of Kessler's

11

limited warranty to repair or replace his defective phone without charge but refused in advance to do so, thus freeing him from any further obligation to comply with its terms.

Samsung has not shown that Kessler's complaint fails to state a cognizable claim for breach of express warranty under Wisconsin law. Therefore, I will deny Samsung's motion to dismiss with respect to that claim.

## IV. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Kessler alleges that Samsung breached the implied warranty of merchantability by selling him a smartphone with a camera that was not "fit for the ordinary purposes for which such goods are used." *See* Wis. Stat. § 402.314(2)(c). Under Wisconsin law, "a warranty that the goods shall be merchantable is implied" in any sale where "the seller is a merchant with respect to goods of that kind." § 402.314(1). After all, "a purchaser is entitled to receive what he buys," at least under ordinary circumstances. *Druml Co. v. Capitol Mach. Sales & Serv. Co.*, 138 N.W.2d 144, 147 (Wis. 1965).

Samsung argues that Kessler's implied-warranty claim fails because he did not provide adequate pre-suit notice of breach as required by Wisconsin law. *See* § 402.607(3)(a). Samsung raised this same argument with respect to Kessler's express-warranty claim. For the reasons already discussed above, this argument fails.

Samsung also argues that Kessler's implied-warranty claim fails because it disclaimed implied warranties in its limited warranty, which provides that "the purchaser takes the product 'as is,'" and apart from the warranty itself, "Samsung makes no express or implied warranty of any kind whatsoever with respect to the product" or its "merchantability." *See* ECF No. 8-3, at 4. In general, under Wisconsin law, language that conspicuously "mention[s] merchantability" in writing or that uses an expression like

"as is" that "makes plain that there is no implied warranty" is an effective disclaimer of implied warranties. *But see Taterka v. Ford Motor Co.*, 271 N.W.2d 653, 656–57 (Wis. 1978) (noting that a disclaimer "made subsequent to the sale" is ineffective).

Kessler argues that Samsung's disclaimer is ineffective under the MMWA, which provides that "[n]o supplier may disclaim . . . any implied warranty to a consumer with respect to [a] consumer product if . . . such supplier makes any written warranty to the consumer with respect to such consumer product." 15 U.S.C. § 2308(a). The MMWA defines "implied warranty" as "an implied warranty arising under State law (*as modified by sections 2308* and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." *Id.* § 2301(7) (emphasis added). Thus, where the implied warranty of merchantability arises under Wisconsin law and § 2308 applies, the warranty cannot be disclaimed. *See* Dee Pridgen & Richard M. Alderman, *Consumer Protection and the Law* § 14:16, Westlaw (updated Nov. 2017) (Under the MMWA, "suppliers who offer a . . . written warranty may not disclaim . . . any implied warranty created by state law.").

Samsung argues that the MMWA's restrictions on disclaimers of implied warranties do not apply with respect to Kessler's state-law claim because "the MMWA governs federal warranty claims," whereas "state warranty law controls . . . state law claims." Def.'s Reply Br., ECF No. 13, at 15. But the MMWA explicitly says otherwise: "A disclaimer . . . made in violation of [§ 2308] . . . [is] ineffective for purposes of [the MMWA] *and State law*." § 2308(c) (emphasis added).

Apart from the arguments already addressed, Samsung does not meaningfully dispute that the implied warranty of merchantability arose under state law here or that, as a "supplier," it made a "written warranty" to a "consumer" with respect to a "consumer

13

product," that is, that § 2308 applies here and bars its purported disclaimer of implied warranties to that consumer with respect to that product. Therefore, I will allow Kessler to proceed on his claim that Samsung breached the implied warranty of merchantability and deny Samsung's motion to dismiss with respect to that claim.

## V. MAGNUSON-MOSS WARRANTY ACT

Finally, Kessler brings individual and class action claims against Samsung under the MMWA for breach of express and implied warranties. The MMWA "provides a federal private cause of action for a warrantor's failure to comply with the terms of a 'written warranty, implied warranty or service contract.'" *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780 (7th Cir. 2011) (quoting *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 522 (7th Cir. 2003)); *see* 15 U.S.C. § 2310(d)(1).

### A. Jurisdiction

Samsung challenges this court's jurisdiction under the MMWA, which provides that federal district courts cannot hear claims "in a suit brought under [§ 2310(d)(1)] . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." § 2310(d)(3)(C). Samsung argues that because Kessler is the only named plaintiff, he cannot proceed with an MMWA class action.

Kessler argues that he need not satisfy the MMWA's 100-plaintiff requirement because he satisfied the jurisdictional requirements of the more-recent Class Action Fairness Act (CAFA), which provides an alternative basis for federal jurisdiction. Even though Samsung did not respond to this argument in its reply brief, which "generally results in waiver," *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017), I must consider this issue because I have an independent duty to verify that federal

jurisdiction exists with respect to all claims brought before this court. *See Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986).

The Seventh Circuit has not addressed "the jurisdictional interplay of the CAFA and the MMWA," but many federal district courts have found that "the CAFA effectively supercedes the MMWA's more stringent jurisdictional requirements." *See Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (collecting cases); *see also* William B. Rubenstein, *Newberg on Class Actions* § 21:7 (5th ed.), Westlaw (updated Dec. 2017) (noting that "[n]umerous courts have concluded that CAFA provides an independent basis for federal subject matter jurisdiction in MMWA cases, even where the MMWA's 100 named plaintiff requirement is not met"). The weight of authority supports Kessler's position, so I will adopt it for present purposes.

Under the CAFA, federal district courts have jurisdiction over a class action if the aggregate amount in controversy exceeds $5 million and at least one member of the class and one defendant are citizens of different states. *See* 28 U.S.C. § 1332(d)(2). Kessler does not allege a specific amount in controversy, but "the complaint as filed puts more than [$5 million] at issue." *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). Further, Kessler and Samsung are citizens of different states. Therefore, I have jurisdiction under the CAFA to hear Kessler's MMWA class action claims.

### B. Notice and a Reasonable Opportunity to Cure

Samsung argues that, even if this court has jurisdiction to hear Kessler's MMWA claims, he failed to satisfy the notice requirements in the MMWA, so his claim still fails. I disagree. In relevant part, the MMWA's notice requirements are as follows:

> No action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty . . . , and a class of

consumers may not proceed in a class action . . . with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply. In the case of . . . a class action . . . for breach of any written or implied warranty . . . , such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

§ 2310(e). In other words,

> [t]he MMWA prohibits the *filing* of an *individual* action unless the defendant has been given a "reasonable opportunity to cure," but it makes a limited exception for class action cases. . . . [A] class action may . . . be *filed* prior to cure, [though] for it to *proceed*, the class proponents must demonstrate that they provided the defendant an opportunity to cure.

*Newberg on Class Actions*, *supra*, § 21:7 (footnotes omitted).

Samsung argues that Kessler failed to provide pre-suit notice of and an opportunity to cure his individual defect. As previously discussed, however, Kessler plausibly alleges that he gave Samsung a reasonable opportunity to address his complaints before he sued but Samsung refused to take corrective action.

Samsung also argues that Kessler did not provide pre-suit notice that he is "acting on behalf of [a] class." § 2310(e). But, as noted above, "the named plaintiffs" in an MMWA class action need only "notify the defendant that they are acting on behalf of the class" when they provide the defendant its "reasonable opportunity" to cure, which they can do *after* bringing suit. *Id.* In fact, the MMWA "allows a putative class action to continue to the certification stage without . . . notice and an opportunity to cure," though both "must be provided by the named plaintiffs before the case can proceed further." *Flynn v. FCA US LLC*, No. 15-C-855, 2016 WL 5341749, at *7 (S.D. Ill. Sept. 23, 2016).

Kessler has provided Samsung with all notice and opportunity to cure to which it is entitled under the MMWA up to this point in the proceedings. I will, therefore, deny Samsung's motion to dismiss Kessler's individual and class action MMWA claims.

## VI. CONCLUSION

In closing, I note that Samsung argues that Kessler lacks standing to pursue injunctive relief because he cannot plausibly allege that he is likely to suffer future harm. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). Kessler has standing to sue, generally, and if he prevails, the "final judgment should grant the relief to which . . . [he] is entitled." *See* Fed. R. Civ. P. 54(c). I will not limit his potential remedies at this preliminary stage in the proceedings.

**THEREFORE, IT IS ORDERED** that Samsung's motion to dismiss (ECF No. 6) is **GRANTED** with respect to Kessler's claim under the New Jersey Consumer Fraud Act and otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Kessler's unopposed motion to file a sur-reply (ECF No. 14) and Samsung's unopposed motion to file a sur-sur-reply (ECF No. 15) are **GRANTED**. The Clerk of Court shall file the parties' proposed briefs accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge